UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JAMES KEVIN CAMPBELL,

    Plaintiff,

    v.                                        CAUSE NO. 3:20-CV-852-MGG

DR. TCHAPTCHET and MARY LOFTUS,

    Defendants.

## OPINION AND ORDER

James Kevin Campbell, a prisoner without a lawyer, is proceeding in this case "on a Fourteenth Amendment claim for money damages against Dr. Tchaptchet and Nurse Loftus for providing inadequate treatment for the flu, kidney stones, left hip injury, and right rotator cuff injury at the Marshall County Jail[.]" ECF 4 at 3. Dr. Tchaptchet and Nurse Loftus filed a motion for summary judgment. ECF 74. Campbell filed a response, and the defendants filed a reply. ECF 102; ECF 104. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment." *Id*. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Summary judgment "is the put up or shut up moment in a lawsuit . . .." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

"[M]edical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to the objective unreasonableness inquiry identified in *Kingsley* [*v. Hendrickson*, 576 U.S. 389 (2015)]." *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). The first consideration is "whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of plaintiff's case." *McCann v. Ogle Cty.*, 909 F.3d 881, 886 (7th Cir. 2018) (quotation marks, brackets, and citations omitted). Then, the court considers "whether the challenged conduct was objectively reasonable," based on the totality of the facts and circumstances. *Id.*

Campbell is proceeding against both defendants for providing objectively unreasonable medical treatment for his left hip injury, right shoulder injury, flu symptoms, and kidney stones. Each medical condition will be addressed in turn.

*Left hip injury*

The parties provide evidence showing the following facts: Prior to his admission to the Marshall County Jail, Campbell was in two separate motor vehicle accidents resulting in injuries to his hip. ECF 75-4 at 9. After each incident, he was treated at Plymouth Hospital, and was discharged and encouraged to take ibuprofen or Tylenol as needed. *Id.*; ECF 75-3 at 1-2; ECF 75-5 at 10-17.

On October 30, 2018, Campbell arrived at the Marshall County Jail. ECF 75-2 at 1; ECF 75-5 at 27. In a medical questionnaire completed that same day, Campbell did not report any significant medical issues but reported he had been involved in a car crash. ECF 75-2 at 2; ECF 75-5 at 8-9.

On November 20, 2018, Nurse Loftus completed a full health assessment of Campbell. ECF 75-2 at 2; ECF 75-5 at 2-3. Campbell reported a history of two car accidents with pain in his hip thereafter. *Id.* Nurse Loftus concluded Campbell did not have any chronic care condition or any immediate medical concerns that required urgent attention. *Id.*

On November 25, 2018, Nurse Loftus saw Campbell for a nursing assessment after he submitted a healthcare request complaining of ongoing hip pain secondary to a prior auto accident. ECF 75-2 at 2; ECF 75-5 at 19. He reported he had previously taken ibuprofen and Naproxen. *Id.* Nurse Loftus contacted Dr. Tchaptchet, who entered a verbal order for Campbell to receive Naproxen. *Id.*; ECF 75-3 at 2.

Campbell received Naproxen through early 2019, until he was caught "cheeking" the medication instead of taking it as prescribed. ECF 75-2 at 3. As a result, his prescription for Naproxen was suspended. *Id.*

On January 7, 2019, Nurse Loftus received a health care request from Campbell, in which he was requesting to discuss his pain and a review of his records from Plymouth Hospital regarding his hip. ECF 75-2 at 3; ECF 75-5 at 23. Nurse Loftus obtained his medical records which showed he had previously received a five-day supply of medication in June 2018. *Id.* Nurse Loftus informed him he would need to see a physician and would be scheduled. *Id.*

On January 8, 2019, Nurse Loftus received another healthcare request from Campbell, in which he complained of the medication he was receiving for his ongoing pain. ECF 75-2 at 3; ECF 75-5 at 20. Nurse Loftus notified Dr. Tchaptchet, who saw Campbell for an assessment that next day. *Id.*; ECF 75-3 at 2; ECF 75-5 at 21. During this visit, Campbell complained of hip pain secondary to two prior car accidents. ECF 75-3 at 2; ECF 75-5 at 21. Dr. Tchaptchet noted Campbell had good range of motion in his hip, and did not complain about tenderness upon exam. *Id.* Campbell indicated his prescription for ibuprofen was not providing relief, so Dr. Tchaptchet ordered he receive Tylenol instead. *Id.* On February 26, 2019, Dr. Tchaptchet entered an order for Campbell to continue receiving Tylenol only as a "crush and float" to limit the potential for diversion. ECF 75-2 at 3; ECF 75-3 at 3; ECF 75-5 at 1.

Around July 19, 2020, Nurse Loftus received a healthcare request from Campbell complaining of hip pain. ECF 75-2 at 4. Nurse Loftus noted that Dr. Tchaptchet was at

4

the facility that day, and he saw Campbell for an assessment. *Id.* On July 22, 2020, Campbell received an x-ray of his hip, noting moderate osteoarthritis. ECF 75-3 at 3; ECF 75-5 at 26.

On September 4, 2020, Campbell was referred to an offsite orthopedic specialist regarding his hip, and the specialist concluded Campbell would eventually require a total hip replacement surgery. ECF 75-3 at 3-4; ECF 102-1 at 9-10. The specialist concluded Campbell's joint damage was "too severe" to respond to other treatment options, and stated the surgery would be scheduled at the patient's convenience. ECF 102-1 at 10.

On September 6, 2020, Nurse Loftus called and spoke with Campbell's orthopedic surgeon's office regarding his hip and the possible means for surgery. ECF 75-2 at 4; ECF 75-5 at 25. Nurse Loftus informed the orthopedic surgeon's office that if a surgery on the hip was necessary, they would like to get it scheduled. *Id.* However, the nurse at the orthopedic surgeon's office indicated that while Campbell may eventually require a total hip replacement, it was not an urgent issue that would need to be done anytime soon, or even within the next year. *Id.* The off-site office indicated there would be no issues waiting at least a year, if not more, before moving forward with hip replacement surgery. *Id.* Moreover, it was suggested Campbell should wait to have the surgery when he was out of the jail setting, as it is a major surgery and recovering in a jail setting is not ideal. *Id.* As such, based upon the representation from the orthopedic office, surgery was not scheduled for Campbell. *Id.*

Here, it is undisputed the defendants treated Campbell's hip pain by providing pain medications, referring him for an x-ray, and then referring him to an orthopedic specialist to determine if surgery was necessary. Campbell argues this treatment was objectively unreasonable because the defendants should have scheduled him for hip surgery. ECF 102 at 1-2. However, Nurse Loftus attests she contacted the orthopedic surgeon's office to schedule surgery and was informed that surgery was not urgent and could wait a year or more. EC 75-2 at 4. Moreover, Nurse Loftus attests that at no time did Campbell receive any recommendation from a specialist for immediate or urgent hip surgery, and that if any specialist had recommended he receive immediate surgery it would have been scheduled. *Id.* at 5. Campbell responds that his current surgeon Dr. Cien "did order the surgery" and "has refuted to me that any of his nursing staff would go behind his back and say the surgery is not necessary," but he provides no evidence in support of this assertion aside from inadmissible hearsay. ECF 102 at 1. Because Campbell provides no admissible evidence disputing Nurse Loftus' attestation that no specialist ever recommended he receive immediate surgery, no reasonable jury could conclude the defendants' conduct of waiting to schedule hip replacement surgery was objectively unreasonable. Thus, the undisputed facts show the defendants provided objectively reasonable treatment for Campbell's left hip injury by providing pain medications, referring him for an x-ray, and referring him to an orthopedic specialist. Summary judgment is warranted in favor of the defendants on this claim.

6

*Right shoulder injury*

The parties provide evidence showing the following: Prior to his admission to the Marshall County Jail, Campbell suffered an injury to his right shoulder in a motor vehicle crash. ECF 75-4 at 9. Records from Plymouth Hospital show Campbell was seen in the ER on June 4, 2018, complaining of right shoulder pain secondary to a motor vehicle crash. ECF 75-3 at 1-2; ECF 75-5 at 16-17. He was diagnosed with a right shoulder strain, and was discharged and encouraged to take ibuprofen or Tylenol as needed. *Id.* On June 17, 2018, Campbell was again seen at Plymouth Hospital and was given prescriptions for medications for five days and encouraged to see a primary care physician for further management. ECF 75-3 at 2; ECF 75-5 at 10-15.

On October 30, 2018, Campbell arrived at the Marshall County Jail. ECF 75-2 at 1; ECF 75-5 at 27. Nurse Loftus performed an assessment, and Campbell reported a medical concern with his right shoulder. *Id.* On November 20, 2018, Nurse Loftus completed a full assessment of Campbell and concluded he did not have any chronic care condition or immediate medical concerns that required urgent attention. ECF 75-2 at 2.

On March 19, 2019, Nurse Loftus received a healthcare request from Campbell complaining of ongoing shoulder pain. ECF 75-2 at 3; ECF 75-5 at 24. She referred him to be seen by Dr. Tchaptchet. *Id.* It is unclear if or when Dr. Tchaptchet saw Campbell in response to this referral.

On June 4, 2019, Dr. Tchaptchet saw Campbell during rounds in the cell house and noted he was still complaining of right shoulder pain. ECF 75-3 at 3. On August 7,

7

2019, Campbell received an x-ray of his shoulder showing some degeneration but no fracture, dislocation, or other abnormality. ECF 75-2 at 3; ECF 75-3 at 3; ECF 75-5 at 4. On October 4, 2019, Campbell received an MRI of his shoulder which found "tearing of the posterior labrum." ECF 102-1 at 8.

At some point, Campbell was referred to an offsite orthopedic specialist regarding his shoulder and received a cortisone injection. ECF 75-3 at 4. Nurse Loftus attests she saw Campbell after he returned from the specialist, and Campbell reported the orthopedic surgeon informed him surgery would be an absolute last resort and he should attempt exercises and other noninvasive interventions first. ECF 75-2 at 5; ECF 75-5 at 7. Nurse Loftus attempted to discuss the exercise instructions with Campbell and provide copies of the instructions, but Campbell told Nurse Loftus the copies could be thrown away because the doctor "doesn't know what he is talking about." *Id.*

In his response, Campbell argues that Dr. Rozzi told him he should "go in with two small incision and clean out the cuff and tie up the torn ligament," but the defendants had him "shoot me with a cortisone shot like a football running back waiting for the off season to correctly operate." ECF 102 at 1.

Here, it is undisputed the defendants treated Campbell's shoulder injury by providing pain medications, referring him for an x-ray and MRI, and then referring him to an orthopedic specialist, who provided him cortisone shots and exercises to strengthen his shoulder. Campbell claims Dr. Rozzi told him he "could and should" perform surgery on his shoulder (ECF 102 at 1), but he does not dispute that he was provided shoulder exercises to attempt before considering surgery and that he refused

8

to attempt the exercises. Campbell cannot manufacture a constitutional violation by refusing to attempt the treatment methods offered to him. *See Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir. 2005) (an inmate cannot "be permitted to engineer an Eighth Amendment violation"). Moreover, Campbell provides no evidence Dr. Rozzi made a recommendation to either defendant that he receive surgery. Nurse Loftus attests that at no time did any specialist make a recommendation that Campbell receive immediate or urgent surgery, and Campbell provides no evidence disputing that attestation. Thus, the undisputed evidence shows the defendants provided Campbell objectively reasonable treatment for his shoulder injury by providing pain medication, referring him for an x-ray and MRI, referring him to an orthopedic specialist, and providing him with exercises recommended by the specialist. Accordingly, summary judgment is warranted in favor of the defendants on this claim.

*Flu*

The parties agree that Campbell reported he had the flu when he first arrived at the Marshall County Jail on October 30, 2018, and was quarantined as a result. ECF 75-2 at 1-2; ECF 75-5 at 8-9, 27. Nurse Loftus attests the Marshall County Jail's standard procedure is to place inmates who arrive with the flu in quarantine until they can be screened and released. ECF 75-2 at 2. The parties provide no evidence regarding what treatment Campbell received for the flu. At his deposition, Campbell testified his claim is not about inadequate treatment for the flu, but about being quarantined in a cell with another offender that he believed had a staph infection. ECF 75-4 at 17-18. However, Campbell provides no evidence supporting this assertion or showing that he suffered

9

any injury as a result of being quarantined with another offender. Based on the evidence in the record, no reasonable jury could conclude the defendants violated Campbell's Fourteenth Amendment rights by providing objectively unreasonable treatment for the flu. Summary judgment is warranted in favor of the defendants on this claim.

*Kidney Stone*

The parties provide evidence showing the following: On April 29, 2020, Campbell was referred to the emergency room for complaints of left sided back and flank pain with vomiting. ECF 75-2 at 3-4; ECF 75-3 at 3; ECF 75-5 at 28-32. A CT scan confirmed a small kidney stone. *Id.* A urinalysis showed no sign of infection, and Campbell was discharged back to jail. *Id.*

On May 15, 2020, Nurse Loftus received a healthcare request from Campbell discussing his emergency room visit. ECF 75-2 at 4. He was seen for an assessment. *Id.* On May 18, 2020, Campbell received an abdominal x-ray which returned normal. ECF 75-3 at 3; ECF 75-5 at 5.

Around May 31, 2020, Nurse Loftus received a healthcare request from Campbell complaining of left sided abdominal pain. ECF 75-2 at 4. Nurse Loftus informed Campbell he had been scheduled to receive an ultrasound pursuant to the order of Dr. Tchaptchet. *Id.* On June 11, 2020, Campbell received an ultrasound of his abdomen, noting a possible calcification that was non obstructive but no other abnormality. ECF 75-2 at 4; ECF 75-3 at 3; ECF 75-5 at 6.

Dr. Tchaptchet attests it is his understanding that Campbell passed the kidney stone without incident. ECF 75-3 at 3. Alternatively, Campbell testified at his deposition he does not recall passing the kidney stone. ECF 75-4 at 19.

The defendants argue summary judgment is warranted in their favor because there is no evidence Campbell required any treatment different from what was provided. Campbell does not address this claim in his response to the summary judgment motion. He testified at his deposition that the defendants should have brought him back to the hospital to sonicate his kidney stone, but this amounts to a demand for specific care. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (a prisoner is not entitled to demand specific care for a medical condition). Campbell provides no evidence that the defendants' conduct of sending him to the emergency room and then monitoring his condition at the prison with x-rays and ultrasounds while waiting for the kidney stone to pass was objectively unreasonable. Summary judgment is therefore warranted in favor of the defendants on this claim.

For these reasons, the court:

(1) GRANTS the defendants' motion for summary judgment (ECF 74); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against James Kevin Campbell and to close this case.

SO ORDERED on March 6, 2023

                                                 s/ Michael G. Gotsch, Sr.
                                                 Michael G. Gotsch, Sr.
                                                 United States Magistrate Judge